```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                              11 CR 845 (SJ)

CARMINE PERSICO,

            Defendant.

- - - - - - - - - - - - - - - - - -X
```

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT CARMINE PERSICO'S MOTION TO SUPPRESS EVIDENCE</u>

```
                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York  11201
```

```
Elizabeth A. Geddes
Allon Lifshitz
Assistant United States Attorneys
     (Of Counsel)
```

PRELIMINARY STATEMENT

The defendant Carmine Persico moves to suppress evidence obtained by the government pursuant to the execution of a court-authorized search. (Persico's Motion to Suppress Evidence, filed on January 31, 2012 (Docket No. 35) ("Def.'s Mot.")). For the reasons set forth below, the government respectfully submits that the defendant's motion is without merit and should be denied.

STATEMENT OF FACTS

I.  Arrest Warrant and Seizure of Telephones

On October 25, 2011, Carmine Persico, a long-time associate of the Colombo organized crime family of La Cosa Nostra ("Colombo family" and "LCN," respectively), was arrested at his residence in Long Island, New York, pursuant to an arrest warrant for a violation of 18 U.S.C. § 894(a). In the course of executing the arrest warrant, the FBI recovered in plain view four cellular telephones (identified in the subsequently-obtained search warrant as "ONE BLACK AND GREY SAMSUNG VERIZON CELLULAR TELEPHONE, WITH MEID HEX A0000029C4B19E; ONE BLACK AND GREY SAMSUNG VERIZON CELLULAR TELEPHONE, WITH SERIAL NUMBER MEID HEX A0000029C40116; ONE VIRGIN MOBILE LG CELLULAR TELEPHONE, WITH SERIAL NUMBER 105CYPY0559408; and ONE BLACK AT&T IPHONE" (hereinafter, the "Subject Cellular Telephones")) from Persico's bedroom, in which Persico alone resided.

The FBI agent who recovered the Subject Cellular Telephones was the affiant on both the complaint in support of the arrest warrant for Persico (hereinafter, the "Complaint") and the affidavit in support of the search warrant that was subsequently obtained for the Subject Cellular Telephones (hereinafter, the "Search Warrant Affidavit").  As made clear in both the Complaint and the Search Warrant Affidavit, the agent has been employed with the FBI since 1996 and is currently assigned to the squad tasked with investigating the Colombo family.  During his tenure with the FBI, he participated in several long-term organized crime investigations as well as other investigations, and has conducted physical and electronic surveillance, executed search warrants, reviewed and analyzed numerous taped conversations, and debriefed cooperating witnesses and confidential informants.

Based on his training and experience, the FBI agent was aware of the following at the time he seized the Subject Cellular Telephones:

- Members and associates of LCN often communicate with other members and associates of LCN using cellular telephones to arrange meetings with other members and associates of LCN;

- Members and associates of LCN frequently store their criminal associates' contact information in their cellular telephones;

- Members and associates of LCN frequently carry multiple cellular telephones to communicate in furtherance of their racketeering crimes; and

- Members and associates of LCN often communicate with the victims of their illegal activities (such as extortion victims) by cellular telephone.

The FBI agent also was personally aware at the time that he seized the Subject Cellular Telephones that <u>Persico</u> used cellular telephones to arrange meetings with organized crime members and associates. For example, the agent was aware that in May 2010, Persico used a cellular telephone to arrange an early-morning meeting between Anthony Russo, who at the time was a Colombo family soldier, and then-Colombo family street boss Andrew Russo. The agent was also aware that Persico communicated with Anthony Russo using cellular telephones in connection with the conspiracy to use extortionate means to collect a debt charged in the Complaint.

II. <u>Search Warrant</u>

Following the seizure of the Subject Cellular Telephones, the Honorable Ramon E. Reyes, Jr., authorized the government to search the telephones pursuant to a search warrant. (A copy of the Search Warrant Affidavit is attached as Exhibit A.) The Search Warrant Affidavit characterized the Colombo family as "a group of individuals associated in fact" and described the structure of the Colombo family, including the members of the administration, captains, soldiers and associates. (Search Warrant Affidavit ¶¶ 6, 9-11). The Search Warrant Affidavit also incorporated by reference the facts set

4

forth in the Complaint, including Persico's role in the charged conspiracy to use, and the use of, extortionate means to collect a debt owed to an individual associated with the Gambino organized crime family of La Cosa Nostra (the "Gambino family"), and Persico's above-described use of telephones. (Search Warrant Affidavit ¶¶ 20, 25). Finally, the Search Warrant Affidavit included the affiant's beliefs based on his "training, experience and knowledge of [the investigation in the Colombo family]" set forth above regarding the use of cellular telephones by members and associates of organized crime, such as Persico. (Search Warrant Affidavit ¶¶ 26-28).

## ARGUMENT

I. **The Subject Cellular Telephones Were Lawfully Seized During the Execution of The Arrest Warrant For Persico**

During the execution of the arrest warrant for Persico, law enforcement agents lawfully seized the Subject Cellular Telephones in plain view.

A. **Applicable Law**

The Fourth Amendment protects individuals from unreasonable searches and seizures, but "[i]t is well established that under certain circumstances, the police may seize evidence in plain view without a warrant." Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). Under the "plain view" doctrine, agents may seize an item without a warrant provided that the agents viewed the object from a lawful vantage point,

i.e., the agents did not violate the Fourth Amendment in arriving at the place from where they could see the object, and it was "immediately apparent that the object is connected with criminal activity." United States v. Williams, 2004 WL 2030016, at *1 (2d Cir. Sept. 10, 2004).

Courts routinely refuse to suppress items found in plain view during the execution of a search warrant where the evidentiary value of an item was apparent to the executing officer because of that officer's particular familiarity with the investigation. See, e.g., United States v. Jass, 2009 WL 1674328, at *3 (2d Cir. June 16, 2009) (denying defendant's motion to suppress blender and drink mixes not mentioned in warrant that authorized search of defendant's residence for sexual abuse of a minor, where victim had told searching agent that defendant had made her blended drinks, thus making evidentiary value of the blender and drink mixes immediately apparent).

With respect to whether the "incriminating character" of the item seized is "immediately apparent," two inquiries are necessary: first, what information about the seized item was readily apparent to agents during their search, and second, did that information give rise to a sufficient probability, i.e., probable cause, that the seized item represented evidence of criminal activity to justify its seizure. United States v.

$557,933.89, More or Less, In United States Funds, 287 F.3d 66, 81 (2d Cir. 2002).  Whether the seized items are contraband is irrelevant; all that is required is that the agent "have probable cause to suspect that the item is connected with criminal activity."  Williams, 2004 WL 2030016, at *1 (citing United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998)). Probable cause is based on "the totality of the circumstances," and the possibility of an "innocent explanation" does not "preclude a good faith basis in probable cause."  Illinois v. Gates, 462 U.S. 213, 230-31 (1983).

    2.   Analysis

As an initial matter, Persico incorrectly suggests that the incriminatory nature of items seized in plain view must be a certainty.  (See Def.'s Mem. at 4).  His claim is incorrect.  In Texas v. Brown, the Supreme Court explained that the "immediately apparent" test does not require "an unduly high degree of certainty as to the incriminatory character of evidence."  Brown, 460 U.S. 730, 741-42 (1983).

> The "immediately apparent" language does not require that police officers "know" that certain items are contraband or evidence of a crime.  Rather, there need only be probable cause to believe that the item may be associated with criminal activity. [Brown, 460 U.S. at 741-42.]  "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required."  Id.

7

United States v. Ling Zhen Hu, 2010 WL 4451532 (W.D.N.Y. Nov. 3, 2010).

In light of the knowledge, training and extensive experience of the agent who seized the Subject Cellular Telephones, their seizure was plainly permissible under the plain view doctrine.  See United States v. Reyes, 2007 WL 419636 (D. Conn. Jan. 30, 2007) (finding seizure of cellular telephones was proper under plain view doctrine because incriminating nature of such items was readily apparent to a trained DEA agent with over ten years of law enforcement experience who knew that such items were tools of the drug trade).  That is, the agent immediately identified that the presence of four cellular telephones in Persico's bedroom – a room that Persico alone occupied – gave rise to a sufficient probability that the items constituted evidence of the existence, structure, and protocol of the Colombo family and La Cosa Nostra.  See United States v. Gotti, 42 F. Supp. 2d 252, 276 (S.D.N.Y. 1999) (finding that seizure of defendant's "wedding list and alleged organized crime promotion list" did not exceed the scope of the warrant when it was performed by an officer who had "extensive training and experience in the investigation of organized crime" and who therefore could immediately identify the documents as direct evidence of RICO violations).

II. <u>The Search Warrant Was Supported by Probable Cause</u>

Persico's motion to suppress the evidence obtained during the search of the Subject Cellular Telephones should be denied because the totality of the circumstances set forth in the Search Warrant Affidavit established probable cause. Moreover, even assuming <u>arguendo</u> that the search warrant was not supported by probable cause, the motion should be denied because the agents properly relied upon the judge's issuance of the warrant and executed it in good faith.

    A. <u>Applicable Law</u>

An affidavit supporting a search warrant is presumptively valid. <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978). This presumption stems from a belief in the function of the examining magistrate as a neutral gatekeeper, and encourages law enforcement to seek warrants. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 914 (1984) ("the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination" (internal quotation marks and citation omitted)). Review is, therefore, limited "to whether the issuing judicial officer had a substantial basis for the finding of probable cause." <u>United States v. Singh</u>, 390 F.3d 168, 181 (2d Cir. 2004) (quoting <u>United States v. Wagner</u>, 989 F.2d 69, 72 (2d Cir. 1993)). <u>See</u> <u>also</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 239 (1983) (reviewing courts will not defer to a

warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause"). Probable cause is based on "the totality of the circumstances," id. at 230-31, and "[t]he fact that an innocent explanation may be consistent with the facts as alleged . . . does not negate probable cause . . . . [and] neither should it preclude a good faith basis in probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985); see also United States v. Carmel, 548 F.3d 571, 576 (7th Cir. 2008) (defendant's possession of top handles, which could potentially be used in both lawful and unlawful weapons, supported finding of probable cause to believe that defendant possessed an unregistered machine gun; the potential lawful use of the top handles did not negate the incriminatory inference); United States v. Webb, 623 F.2d 758, 761 (2d Cir. 1980) ("[F]acts ostensibly sufficient to establish probable cause for an arrest are not negated simply because such facts also may be consistent with the suspect's innocence."); United States v. Colquitt, 2007 WL 4305551, at * 7 (E.D. Wis. Dec. 7, 2007) (holding that "competing inferences do not defeat . . . [a] finding of probable cause . . . [because] probable cause is a fair probability that evidence of a crime will be found in a particular place . . . [and] proof beyond a reasonable doubt, or even proof by a preponderance of the evidence, is not needed").

10

Even where a search warrant is not supported by probable cause, evidence collected pursuant to a search warrant signed by a neutral magistrate is still admissible if the agents acted in good faith in executing the warrant. In Leon, the Supreme Court held that the exclusionary rule of the Fourth Amendment generally should not be applied to suppress evidence obtained by officers acting in reasonable reliance on a search warrant that is ultimately determined to be defective. 468 U.S. at 921. The underlying rationale for this exception is that the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" Id. at 906 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). See also Arizona v. Evans, 514 U.S. 1, 10 (1995) (exclusion only warranted if it will result in "appreciable deterrence" of police misconduct).

Although the determination of whether to apply the good faith exception in favor of admitting evidence must be decided "on a case-by-case basis," suppression should only occur "in those unusual cases in which exclusion will further the [deterrent] purposes of the exclusionary rule," such as where law enforcement has engaged in willful, or at the very least negligent, conduct. Leon, 468 U.S. at 918. Exclusion of evidence is warranted only in cases where the issuing judge is

11

"misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or in cases where a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." Id. at 923.

B.  Analysis

    1.  The Warrant Was Sufficiently Particular and Supported by Probable Cause

Based on the totality of the circumstances, as thoroughly detailed in the Search Warrant Affidavit, there is a substantial basis for Judge Reyes's determination that there was probable cause that the Subject Cellular Telephones contained evidence of a racketeering conspiracy. Specifically, the affidavit set forth probable cause that the defendant, together with members of the Colombo family, conspired to use, and used, extortionate means to collect a debt; that the defendant used cellular telephones to communicate with other members of the Colombo family in furtherance of racketeering activities; and that members and associates of LCN – such as the defendant – stored contact information and related information for other LCN members and associates and their victims. Accordingly, Judge Reyes's determination that there was probable cause should not be disturbed.

12

The defendant's suggestion that the affidavit was deficient because it failed to include "<u>what</u> occurred at the meetings" between Persico and Colombo family members Anthony Russo and Andrew Russo, and "<u>why</u> the agent believed illegal activity was conducted at the meetings" is also unavailing. (Def.'s Mot. at 10).  The very existence of meetings between Persico and Colombo family members is evidence of their association – and thus evidence of an "enterprise."  18 U.S.C. § 1961(4).  In a similar vein, the existence of Persico's initials ("CP") and a telephone number in Anthony Russo'stelephone is evidence of an enterprise,[1] and illustrative of the probable fruits of a search of the Subject Cellular Telephones.

Nor were the facts detailed in the search warrant affidavit "stale," as the defendant suggests.  (Def.'s Mot. at 7).  Although the Search Warrant Affidavit does not specify the precise dates on which Anthony Russo spoke with Persico over the

---

[1] There is no merit to the defendant's claim that the "agent simply guessed" that the "CP" in Anthony Russo's telephone was Persico.  (Def.'s Mot. at 10).  The agent made his determination based on his extensive knowledge of the Colombo family, including Anthony Russo's relationship with Persico. Notably, members and associate of organized crime, like most criminals, tend not to list a full first and last name for their criminal associates and instead use nicknames, such as initials. Moreover, the government is not presently aware of any Colombo family member or associate who was associated with Anthony Russo other than Persico and Persico's grandfather Carmine "the Snake" Persico (the official boss of the Colombo family who has been incarcerated for many years) and who has the initials "CP."

13

telephone, the inclusion of a telephone number for Persico in a cellular telephone seized from Anthony Russo in January 2011 makes clear that the information is relatively recent. In any event, the Second Circuit has explained that "the passage of time is not controlling and is but one factor to be considered, along with the kind of property sought and the nature of the criminal activity, in resolving the issue of probable cause for a search warrant." Singh, 390 F.3d at 181-82. See also United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997) (observing that mere lapse of time is not controlling on question of staleness of information in search warrant affidavit; rather, staleness is evaluated in light of the particular facts of the case and nature of criminal activity and property sought). Given that the Search Warrant Affidavit in this case established probable cause to believe that members and associates of organized crime used telephones to communicate with other members and associates of organized crime, and Persico was an associate of organized crime at the time of his arrest, the nine-month passage of time between the seizure of Anthony Russo's telephone with Persico's initials and telephone number and the seizure of the Four Cellular Telephones did not negate the likelihood that there would be evidence stored therein.

    Finally, Persico's argument that the Search Warrant Affidavit was defective for failing to "provide a particular

14

basis of probable cause for each of the four phones to be searched" is flawed.[2] (Def.'s Mot. at 8). The warrant specifically listed the devices, namely, the four cellular telephones seized from Persico's bedroom on the day of his arrest, with probable cause that evidence of a racketeering conspiracy could have taken place on each. As one district court (in a case cited by Persico) correctly explained:

> [C]ourts have upheld the generic seizure of computer equipment where the computer is being used as an instrumentality of crime . . . . See, e.g., United States v. Upham, 168 F.3d [532, 535 (1st Cir. 1999)] (upholding the "generic" seizure of computer equipment in case involving the possession and interstate transportation of child pornography images); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) (upholding blanket seizure of defendant's entire computer system in investigation relating to defendant's possession of child pornography); Davis v. Gracey, 111 F.3d 1472, 1480 (10th

---

[2] To the extent that Persico argues that the warrant itself failed to describe the Subject Cellular Telephones with particularity, that argument is also without merit. The warrant was titled "In the Mater of the Search of Four Cellular Telephones" and provided that the items to be searched were further described in "Attachment A"; however, the attachment describing the four cellular telephones was inadvertently omitted from the warrant. Even assuming arguendo that the warrant did not describe the Four Cellular Telephones with particularity, the items were described with particularity in the affidavit and the agents acted in good faith in relying on the warrant. See United States v. Rosa, 626 F.3d 56, 65 (2d Cir. 2010) ("Because there is no evidence that Investigator Blake and his team of officers actually relied on the defective warrant, as opposed to their knowledge of the investigation and the contemplated limits of the town justice's authorization, in executing the search, the requisite levels of deliberateness and culpability justifying suppression are lacking.").

15

> Cir. 1997) (upholding the seizure of computer "equipment" used to store obscene pornography). The logic behind this result is that the investigating agents cannot know in advance which components of the system will contain the contraband and therefore, it is reasonable for agents to seize any components in which the contraband may reasonably be found. See, e.g., Upham, 168 F,3d at 535 ("A sufficient chance of finding some needles in the computer haystack was established by the probable cause showing in the warrant application."); Lacy, 119 F.3d at 746 ("The government knew Lacy had downloaded computerized visual depictions of child pornography, but did not know whether the images were stored on the hard drive or on one or more of his many computer disks . . . there was no way to specify what hardware and software had to be seized in order to retrieve the images accurately"). See also United States v. Hill, 459 F.3d 966, 973 (9th Cir. 2006) (noting that "it is impossible to tell what a computer storage medium contains just by looking at it").

United States v. Karrer, 2010 WL 3824195, at *7 (W.D. Pa. Sept. 23, 2010) (quoting United States v. Wecht, 619 F. Supp.2d 213, 247 (W.D. Pa. 2009)).

        b.    The Warrant was Executed in Good Faith

Moreover, even assuming arguendo that the warrant was not supported by probable cause, the executing agents acted in good faith. They properly sought court authorization and relied upon the judge's authorization to search the Four Cellular Telephones. The defendant does not – and cannot – allege that the affiant who swore the warrant included information that was false, or that the warrant was so facially deficient that

executing officers could not presume that it was valid. See Leon, 468 U.S. at 923 ("We conclude that the marginal or non-existent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").

## CONCLUSION

For the reasons set forth above, Persico's motion to suppress the evidence obtained pursuant to the Search Warrant should be denied.

Dated:   Brooklyn, New York
         February 3, 2012

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York  11201

Elizabeth A. Geddes
Allon Lifshitz
Assistant U.S. Attorneys
     (Of Counsel)