

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:NS
F.#2011R01744

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 9, 2012

<u>VIA ECF AND HAND DELIVERY</u>

The Honorable Sterling Johnson, Jr.
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:  <u>United States v. Carmine Persico</u>
>        <u>Criminal Docket No. 11-845 (SJ)</u>

Dear Judge Johnson:

The government respectfully moves to disqualify Joseph R. Corozzo, Esq., and his law firm from representing the defendant, Carmine Persico, in the above-captioned case based on multiple conflicts of interest.  The defendant is charged in a two-count indictment with Extortionate Collection of Credit Conspiracy and Extortionate Collection of Credit.  As discussed in greater detail below, the government expects to present evidence relating to: the participation of one of Mr. Corozzo's former clients, Theodore Persico, Jr., in the charged conspiracy; Theodore Persico, Jr.'s relationship to Mr. Corozzo and the defendant; and a consensual recording in which Mr. Corozzo is mentioned by name in a discussion regarding the charged conspiracy.  Mr. Corozzo himself will thus be the topic of evidence at trial and is a potential fact witness.  Should he remain as counsel to the defendant, at trial, Mr. Corozzo will likely become an unsworn witness, who cannot be cross-examined by the government.  In addition, Mr. Corozzo owes a continuing duty of loyalty to his former client, which may prevent him from properly advising the defendant on potential defense strategies and options that may be adverse to his former client.  Taken together, these conflicts warrant Mr. Corozzo's disqualification.

I. Factual Background

    A. Charges

The defendant is charged with conspiring to participate in the use of extortionate means to collect an extension of credit and extortionate collection of credit, each in violation of 18 U.S.C. § 894(a)(1). Proof of the defendant's involvement in the charged crimes will be established by, among other things, testimony of cooperating witnesses and consensual recordings made by a cooperating witness.

    B. Conflict

The charged crimes result from an effort by the defendant and other Colombo crime family members and associates, including the defendant's brother, Theodore Persico, Jr., and Anthony Russo ("Russo"), to collect a gambling debt from an individual affiliated with the Gambino organized crime family of La Cosa Nostra. During the time period of the extortion conspiracy, unbeknownst to members and associates of organized crime, an associate of the Colombo crime family ("CW-1") was cooperating with the government and making consensual recordings. Among other things, these recordings captured conversations between CW-1 and Russo regarding the charged conspiracy in which the defendant and Theodore Persico, Jr., are discussed at length.

In Spring 2010, at the time of the charged extortion conspiracy, Mr. Corozzo represented Theodore Persico, Jr., in a separate criminal matter. See United States v. James Bombino, et al., Docket No. 10-147 (SLT) (E.D.N.Y.), Docket Entry #15 (Notice of Attorney Appearance of Joseph R. Corozzo for Theodore N. Persico, Jr. dated March 9, 2010). Mr. Corozzo was relieved as counsel for Theodore Persico, Jr., in Bombino on June 3, 2011 subsequent to the government's filing a motion to disqualify him and his firm as counsel because, during the charged RICO conspiracy, Mr. Corozzo arranged a meeting between his client and a cooperating witness to facilitate his client's collection of loansharking proceeds of incarcerated Colombo crime family member Dino Saracino, thus entangling himself in the facts of the case. See id., Docket Entry #277; see also United States v. Curanovic, et al., Docket No. 08-240 (BMC)(E.D.N.Y.), Docket Entry #1116 (disqualifying Mr. Corozzo from representing Dino Saracino for the same reason); United States v. Gaetano Napoli, et al., Docket No. 10-150 (JG) (E.D.N.Y.), Docket Entries #25 & #31 (disqualifying Mr. Corozzo from representing Gaetano Napoli, Sr., as trial counsel due to evidence implicating Mr. Corozzo in a conspiracy with his client to tamper with a witness, thus

2

entangling Mr. Corozzo in the facts of the case); <u>United States v. Joseph Agate, et al.</u>, Docket No. 08-CR-76 (JBW) (E.D.N.Y.), Docket Entry #486 (disqualifying Mr. Corozzo subsequent to the government's motion arguing, <u>inter alia</u>, that Mr. Corozzo would act as an unsworn witness at trial).

Various consensual recordings refer to the involvement of Mr. Corozzo's former client, Theodore Persico, Jr., in the charged conspiracy and his need for the money collected as a result of being "in trouble" due to his arrest. <u>See</u>, e.g., Exhibit A at 2-3 (draft transcript of excerpt from March 9, 2010 consensual recording). In addition, during a March 26, 2010 conversation recorded by CW-1, Russo told CW-1 that he spoke with "Jo Jo Corozzo" about whether he had been provided with "6,000" – referring to proceeds of the charged extortion and extortion conspiracy. <u>See</u> Exhibit B at 3 (draft transcript of excerpt from March 26, 2010 consensual recording).[1] The "Jo Jo Corozzo" discussed on the March 26, 2010 recording refers to Joseph Corozzo, Jr. – the defendant's attorney. The government anticipates presenting evidence at trial regarding Theodore Persico, Jr.'s arrest in March 2010 and his relationship with Mr. Corozzo and the defendant to corroborate statements captured on the consensual recordings made by CW-1, and to establish that the "Carmine" being discussed by CW-1 and Russo is the defendant, Carmine Persico.

Based on the facts described above, Mr. Corozzo, at minimum, will be a topic of evidence in the case and is a potential witness to events at issue in the case. In addition, given Mr. Corozzo's first-hand knowledge of events that will be the subject of testimony and evidence at trial, there is a strong possibility that Mr. Corozzo will function in his representational capacity as an unsworn witness for the defendant should he remain as counsel. Finally, Mr. Corozzo has a continuing duty of loyalty to his former client, Theodore Persico, Jr., which may limit his ability to zealously advocate

---

[1] Russo's statements on this consensual recording are, at times, difficult to hear due to background conversations and noise. The draft transcript attached as Exhibit B only transcribes the statements of Russo and CW-1; it does not transcribe portions of other conversations and noise captured on the recording. In listening to the relevant recordings and finalizing draft transcripts for trial, the newly-assigned trial team discovered this week that Mr. Corozzo is mentioned by name on the March 26, 2010 recording.

for his client and pursue defenses and strategies, including cooperation, that are adverse to his former client.

## II. Legal Standard

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to counsel unimpaired by conflicts of interest. See United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). Where there is even the possibility of a conflict of interest, the trial court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); see also Wood v. Georgia, 450 U.S. 261, 272-73 (1981); Cuyler v. Sullivan, 446 U.S. 335, 347 (1980); Stantini, 85 F.3d at 13. If the inquiry reveals that an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the Court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995); Levy, 25 F.3d at 153.

If the conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict;
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and
> (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

4

A potential conflict of interest exists where a defense attorney is a potential witness at trial. See United States v. Kliti, 156 F.3d 150, 155 (2d Cir. 1998). Such a conflict must be explored at a Curcio hearing. Id. Failure to do so risks vacatur of a defendant's conviction. Id. at 156-57 (vacating defendant's conviction and ordering a new trial where defense attorney was the only fact witness available to contradict testimony of cooperating witness at trial and no Curcio hearing was held). In these circumstances, a district court must at least question the defendant to determine whether he is willing to waive his right to conflict-free counsel and give the defendant time to digest and contemplate the risks involved in any such waiver. Id.

Notwithstanding a defendant's willingness to waive his attorney's conflict of interest, courts retain "substantial latitude" in refusing such waivers. See Wheat v. United States, 486 U.S. 153, 163 (1988) ("[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."). This is so because "'[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993) (quoting Wheat, 486 U.S. at 160); see also United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("[D]isqualification . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.").

Indeed, where defense counsel is entangled in the facts of the defendant's case such that he should either be available as a witness or would, upon remaining as defense counsel, "become an unsworn witness for the accused," it is counsel's ethical duty to withdraw, and upon failing to do so, counsel should be disqualified, regardless of the defendant's expressed willingness to waive. Locascio, 6 F.3d at 931-34. Because the government, not the defendant, is prejudiced, "waiver is ineffective in curing the impropriety in such situations." Id. at 931, 934; see also United States v. Arrington, 867 F.2d 122, 129 (2d Cir. 1989); Iorizzo, 786 F.2d at 57; United States v. Kwang Fu Peng, 766 F.2d 82, 87 (2d Cir. 1985).

Further, in cases where, as here, numerous conflicts have been raised, "each cannot be considered in isolation, but rather must be considered together when assessing whether there is a congruence of interests between the lawyer and his client." United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); see also Levy, 25 F.3d at 157. In evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

III. Mr. Corozzo's Conflicts Warrant His Disqualification

The government respectfully submits that the Court should, in its discretion, disqualify Mr. Corozzo based on the facts described above and, should the defendant attempt to waive this conflict, refuse his waiver. See Locascio, 6 F.3d at 931; Jones, 381 F.3d at 119.

Given the content of the consensual recordings at issue in this case, including the March 26, 2010 consensual recording where Mr. Corozzo is mentioned by name, and potential trial testimony from Russo that explains the recordings, it is clear that Mr. Corozzo is personally entangled in the facts of the case. In these circumstances, he should be available as a witness at trial, particularly if his recollection of events varies from the government's presentation of the evidence. Further, in the event Mr. Corozzo remains as defense counsel, he will likely become an unsworn witness for the defendant, particularly with respect to any potential cross-examination of Russo. See Kliti, 156 F.3d at 156 ("When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony."). In such a situation, "an attorney's relationship to the events in question may unfairly prejudice the prosecution because 'the attorney can subtly impart his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.'" United States v. Liszewski, Docket No. 06-CR-130 (NGG), 2006 WL 2376382, at *3 (E.D.N.Y. Aug. 16, 2006) (quoting Locascio, 6 F.3d at 933). Waiver by the defendant is ineffective in such circumstances because he is not the party prejudiced. Locascio, 6 F.3d at 934.

Furthermore, Mr. Corozzo's continuing duty of loyalty to his former client, Theodore Persico, Jr., also presents a potential conflict of interest. Evidence regarding Theodore Persico, Jr., his reputation as a violent and dangerous member of the Colombo crime family, his participation in the charged conspiracy and his relationship to the defendant will be part of

6

the government's case at trial.  As a result, Mr. Corozzo may not be able to properly advise the defendant regarding defense strategies or options for resolving the case that are adverse to his former client.  While this type of conflict is generally waivable when considered alone, see United States v. Perez, 325 F.3d 115, 127 (2d Cir. 2003), this conflict must be considered together with the other conflicts identified above.  United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994).  Taken together, the government respectfully submits that Mr. Corozzo's conflicts in this case warrant his disqualification.

>As the Supreme Court has cautioned,
>
>Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when the relationships between parties are seen through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.  It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand.  A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.  These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics . . . .  For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

Wheat, 486 U.S. at 162-63.

At this stage, the Court does not have the benefit of hindsight to know how, if at all, Mr. Corozzo's conflicts have manifested themselves or will manifest themselves in the

decisions he makes in representing the defendant, especially at trial, where the government anticipates offering evidence of the involvement of Theodore Persico, Jr., in the conspiracy, his relationship to Mr. Corozzo and consensual recordings where Mr. Corozzo is mentioned by name.  Unconflicted counsel might make different choices in advising the defendant how to resolve his case or in choosing what defenses to present at trial.  In this case, therefore, the Court should, in the exercise of its broad discretion, decline any waiver and disqualify Mr. Corozzo.  The Court's interest in the integrity of the judicial process, <u>Wheat</u>, 486 U.S. at 160, warrants such a result.  At a minimum, however, a <u>Curcio</u> hearing is required to advise the defendant of the conflicts and the risks of any potential waiver.

<u>Conclusion</u>

For the reasons cited above, the government respectfully submits that Mr. Corozzo should be disqualified from serving as the defendant's counsel.  In addition, because Mr. Corozzo's conflicts are imputed to his law firm, Rubenstein & Corozzo, P.C., members of that firm should also be barred from representing the defendant.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:          /s/
Nadia I. Shihata
Assistant U.S. Attorney
(718) 254-6295

cc:   Clerk of Court (SJ) (by ECF)
      Joseph Corozzo, Esq. (by ECF)